UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:
DARLA C. ARENIVAR,
    Debtor.                                  No. 7-05-10686 SL

PHILIP J. MONTOYA, TRUSTEE,
    Plaintiff,

v.

JAMES P. ARENIVAR,
    Defendant.                          Adv. No. 05-1252 S

**FINDINGS OF FACT AND CONCLUSIONS
OF LAW ON PLAINTIFF'S COMPLAINT**

This matter came before the Court for trial on the merits of Plaintiff's Complaint to Avoid Transfer, to Determine Validity of Ownership Interest, or, in the Alternative, to Sell Estate's Interest and Interest of Co-Owner in Real Property, or, Alternatively, to Obtain Authority to Partition Real Property ("Complaint"). Plaintiff appeared through his attorney Moore, Berkson & Gandarilla, P.C. Defendant appeared through his attorney R. Trey Arvizu. This is a core proceeding. 28 U.S.C. § 157(b)(2)(E).[1]

**FACTS**

1. Debtor Darla Arenivar filed a voluntary petition under Chapter 7 of the Bankruptcy Code on February 1, 2005 ("Petition Date").

2. Plaintiff is the Chapter 7 trustee in the bankruptcy case.

---

[1] Statutory and Rule references are to the Bankruptcy Code as it existed before the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

3.  Defendant is Debtor's ex-husband.

4.  The real property that is the subject matter of the Complaint is located at 4900 Garnet, Las Cruces, New Mexico 88011 in Dona Ana County, New Mexico ("Property").

5.  On June 3, 1999, Defendant and Debtor were divorced by the entry of a Final Decree of Dissolution in cause number D-307-DM-9900045, entitled <u>Darla C. Arenivar v. James P. Arenivar</u>, filed in the Third Judicial District Court, Dona Ana County, New Mexico (the "Divorce Proceeding").

6.  The parties filed a marital settlement agreement ("MSA") in the Divorce Proceeding on January 21, 1999 that provided, in part:

> 5.  Petitioner [Debtor] shall assume the remaining principal balance of the first mortgage on the home at 4900 Garnet, Las Cruces, New Mexico 88011, awarded to her under this agreement. Respondent [Defendant] will execute a Quit Claim Deed to Petitioner to transfer his interest in the home to her.
> 6.  Upon execution of this agreement by both parties, neither shall have any interest in the items transferred to the other, and each shall hold the property transferred to him/her as his/her sole and separate property.
> 9.[2] The parties agree they have divided the debts as follows ...
> 10. That the above-described items of personal property and the above-described debts constitute all of the community property and all of the community debts of the parties hereto as of this date.

---

[2]Sic. There are no paragraphs 7 or 8.

> 12.[3] That each party acknowledges and agrees that the
>       above-division of the community assets is fair and
>       equitable.
> ...
> 15.   The parties agree they will execute the documents
>       necessary to carry out the terms and conditions of
>       this agreement.  Should either party fail to or
>       refuse to execute any such documents in a timely
>       fashion, then in that event, that party agrees to
>       pay reasonable attorneys' fees and costs incurred
>       in the enforcement of the provisions of this
>       agreement.
> ...
> 18.   The parties agree that if they agree to change a
>       provision to this settlement agreement, it will be
>       valid and enforceable provided they make the
>       agreement in writing signed before a notary.

7.   The divorce decree incorporated the MSA.

8.   Defendant did not execute a deed to the Property to Debtor.

9.   Instead, on October 29, 1992, Defendant executed a Warranty Deed ("Deed") transferring the Property to himself and Debtor as joint tenants.  The Deed was filed for record on October 29, 1992.

10.  On or about October 29, 1992, Defendant and Debtor executed a mortgage on the Property to a third party, paying off a first and second mortgage and two other debts and receiving some cash. Defendant testified that he and Debtor were living together again, and neither alone would have qualified for a mortgage. Therefore, he executed the Deed to facilitate the refinancing.

11.  Debtor moved from the premises in April, 2003.

---

[3]Sic.  There is no paragraph 11.

Case 05-01252-s    Doc 24    Filed 08/30/06    Entered 08/30/06 15:04:53 Page 3 of 8

12. At the time Debtor left the Property, the parties had an oral agreement that Defendant would pay the mortgage, taxes and insurance on the Property and that he and the children of the marriage could live there. In return she could walk away from the situation.

13. In fact, Defendant has made all mortgage payments since the refinance in 2002, plus paid all insurance and taxes on the property.

14. Sometime in 2005 Debtor and Defendant signed a "letter" that purported to give up any ownership interest Debtor had in the property, effective April 1, 2003. This letter was not introduced into evidence and the parties do not argue that the letter is relevant to any issue under consideration. The Court assumes that the letter was not executed in front of a notary nor recorded in the land records of Dona Ana County.

15. Plaintiff offered no evidence that the letter was executed with the intent to hinder, delay or defraud creditors, nor did plaintiff offer evidence that Debtor was insolvent at the time she executed the letter.

16. The Court has no credible evidence on the value of the Property as of the Petition Date.

17. The Court has no evidence of the total amount paid by Defendant from the date of refinance to the Petition Date for mortgage payments, taxes or insurance.

18. The Court has no evidence of the total amount paid by Defendant from the Petition Date to the entry of this Opinion for mortgage payments, taxes or insurance.

19. At trial, the Court dismissed Count 1 of the Complaint, which sought to avoid an unperfected transfer of the Debtor's interest in the Property, for lack of proof. The remaining counts for the Court's consideration are Count 2: to Determine the Extent, Validity and Priority of Liens, Claims and Interests in the Subject Property and for Turnover under § 542; and Count 3: for an Order Allowing the Sale of the Undivided Subject Property, including the Defendant's Interest, or, alternatively, for Partition.

**CONCLUSIONS OF LAW**

1. The MSA is a contract, governed by contract principles. Herrera v. Herrera, 126 N.M. 705, 708, 974 P.2d 675, 678 (Ct. App. 1999).

2. All contract rights and causes of action belonging to a debtor become property of the bankruptcy estate under Section 541. 11 U.S.C. § 541(a). See also, e.g., Schertz-Cibolo-Universal City, Independent School District v. Wright (In re Educators Group Health Trust), 25 F.3d 1281, 1283-84 (5th Cir. 1994).

3. Under the MSA, Debtor was entitled to a deed to the Property.

Case 05-01252-s    Doc 24    Filed 08/30/06    Entered 08/30/06 15:04:53 Page 5 of 8

4. On the Petition Date, Debtor had a contract right to file a cause of action for specific performance of the MSA to obtain a 100% interest in the Property.[4] Plaintiff has elected to do this by filing count 2 of the Complaint which seeks turnover.

5. The parties never changed the MSA in writing as required by both the MSA and N.M.Stat.Ann. § 40-2-4 (1978). See also Herrera, 126 N.M. at 708, 974 P.2d at 678 (Marital settlement agreements are subject to the statute of frauds.)

6. Debtor's right to a deed to the full property became estate property upon the filing of the petition. Cf. United States Trustee v. Eppers (In re Eppers), 311 B.R. 826, 833 (Bankr. D. N.M. 2004)(Omitting real property debtor is entitled to receive under a marital settlement agreement from Schedule A is a material misstatement.) See also Maiona v. Vassilowitch (In re Vassilowitch), 72 B.R. 803, 806 (Bankr. D. Mass. 1987)(Divorce court awarded 2/3rds of residence to ex-wife; ex-husband's estate was limited to 1/3rd of the residence although the property held as joint tenants.)

7. Defendant should be ordered to execute a quit claim deed conveying his joint tenancy interest to the bankruptcy estate. Plaintiff should receive judgment on Count 2 of the Complaint.

---

[4] See N.M.Stat.Ann. 40-4-20 (1978)(Failure to distribute property on entry of a divorce decree shall not affect any property rights and either spouse may subsequently institute and prosecute a suit for division and distribution.)

Case 05-01252-s    Doc 24    Filed 08/30/06    Entered 08/30/06 15:04:53 Page 6 of 8

8. From October 29, 2002 to the Petition Date, Debtor and Defendant were cotenants in the Property. Each was liable for one-half the mortgage payments, interest and taxes. To the extent Defendant paid more than one-half of the mortgage payments, interest and taxes from October 29, 2002 to the Petition Date, he has a claim for contribution against the Debtor. Laura v. Christian, 88 N.M. 127, 129, 537 P.2d 1389, 1391 (1975). Defendant may file a non-priority unsecured proof of claim for that amount.

9. From the Petition Date to the entry of this Opinion, all amounts paid by Defendant for mortgage payments, insurance and taxes were actual, necessary, reasonable costs and expenses of preserving the estate. Defendant may file a request for payment of administrative expense for that amount. See 11 U.S.C. § 503(b)(1)(A).

10. Count 3 of the Complaint is moot, given that the Court finds that the estate owns 100% of the Property and that there are no co-owners. Therefore, the Court need not determine the relative benefit/detriment to the parties under 11 U.S.C. § 363(h)(3).

11. The Court will enter a judgment in conformity with these findings and conclusions.

                                      Honorable James S. Starzynski
                                      United States Bankruptcy Judge

Case 05-01252-s    Doc 24    Filed 08/30/06    Entered 08/30/06 15:04:53 Page 7 of 8

copies to:

Bonnie Bassan Gandarilla
Moore, Berkson & Gandarilla, P.C.
PO Box 216
Albuquerque, NM 87103-0216

R Trey Arvizu, III
PO Box 1479
Las Cruces, NM 88004-1479